## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| **MARJORIE CRUZ and MELISSA GARY, individually and on behalf of all others similarly situated,** | Civil Action No. |
| **Plaintiffs,** | **COLLECTIVE AND CLASS ACTION COMPLAINT** |
| **v.** | **JURY TRIAL DEMANDED** |
| **HEALTH CARE FACILITY MANAGEMENT, LLC, d/b/a COMMUNICARE FAMILY OF COMPANIES,** | |
| **Defendant.** | |

## COLLECTIVE AND CLASS ACTION COMPLAINT

Plaintiffs Marjorie Cruz and Melissa Gary ("Plaintiffs"), through their undersigned counsel, individually, and on behalf of all other similarly situated persons, file this Collective and Class Action Complaint ("Complaint") against Defendant Health Care Facility Management, LLC, doing business as CommuniCare Family of Companies ("Defendant" or "CommuniCare"), seeking all available remedies under the Fair Labor Standards Act ("FLSA") and Indiana state law, for failure to pay all wages owed. The following allegations are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to the acts of others.

## JURISDICTION AND VENUE

1.     Jurisdiction over Plaintiffs' FLSA claim is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

2.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' state law claims, because those claims derive from a common nucleus of operative facts.

3.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391. CommuniCare is

incorporated in Ohio and CommuniCare is headquartered and conducts business in the Southern District of Ohio, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within this District.

## PARTIES

4.     Plaintiff Marjorie Cruz is a resident of Elkhart, Indiana. Plaintiff was employed by CommuniCare as a Registered Nurse (RN) from approximately October 2022 to April 2025 at its Valley View Healthcare Center located in Elkhart, Indiana. Pursuant to 29 U.S.C. § 216(b), Plaintiff has consented in writing to be a Plaintiff in this action. *See* Exhibit A.

5.     Plaintiff Melissa Gary is a resident of Grand Rapids, Michigan. Plaintiff was employed by CommuniCare as a Qualified Medical Assistant and Certified Nuse Assistant (CNA) from approximately August 2022 to February 2025 at its Valley View Healthcare Center located in Elkhart Indiana. Pursuant to 29 U.S.C. § 216(b), Plaintiff has consented in writing to be a Plaintiff in this action. *See* Exhibit B.

6.     Defendant HealthCare Facility Management LLC d/b/a CommuniCare Family of Companies ("CommuniCare") is registered Ohio limited liability company with its principal place of business in Hamilton County, Ohio,

7.     The unlawful acts alleged in this Complaint were committed by CommuniCare and/or CommuniCare's officers, agents, employees, or representatives, while actively engaged in the management of CommuniCare's businesses or affairs and with the authorization of CommuniCare.

8.     CommuniCare employed Plaintiffs and continues to employ similarly situated employees as defined by the FLSA, 29 U.S.C. § 203(d). *See also* 29 C.F.R. 791.2(a).

9.     During all times relevant, Plaintiffs were employees of CommuniCare and covered

by the FLSA.

10.    During all times relevant, CommuniCare was an employer and/or enterprise covered by the FLSA.

11.    At all times material to this action, CommuniCare has been engaged in commerce or in the production of goods for commerce as defined by the FLSA. It provides health care services and operates healthcare facilities across at least seven states; sells and markets its services across state lines and throughout the United States; uses telephonic transmissions crossing state lines to do business; accepts and utilizes products, medications and medical supplies that have shipped across state lines; and uses connected health technology and telehealth systems that allow access to its services from different locations and across state lines.

12.    CommuniCare's annual gross sales exceeds $500,000.

## COLLECTIVE AND CLASS DEFINITIONS

13.    Plaintiffs bring Count I of this lawsuit pursuant to the FLSA, 29 U.S.C. § 216(b), as a collective action on behalf of themselves and the following proposed collective:

> All current and former non-exempt, hourly-paid employees of CommuniCare in the United States during the past three (3) years and who worked in excess of forty (40) in a workweek (the "FLSA Collective").

14.    Plaintiffs bring Counts II-III of this lawsuit as a class action pursuant to Fed. R. Civ. P. 23, on behalf of themselves and the following class:

> All current non-exempt employees and former non-exempt employees (if they voluntarily terminated their employment) who were employed by CommuniCare in the state of Indiana during the three (3) years prior to the filing of this Complaint (the "Indiana Wage Payment Class").

15.    Plaintiffs bring Counts II-V of this lawsuit as a class action pursuant to Fed. R. Civ. P. 23, on behalf of themselves and the following class:

> All current non-exempt employees and former non-exempt employees (if they

voluntarily terminated their employment) who were employed by CommuniCare in the state of Indiana during the applicable statute of limitations prior to the filing of this Complaint, and who earned, but were not paid, an attendance bonus (the "Indiana Bonus Class").

16.     The Indiana Wage Payment Class and Indiana Bonus Class are together referred to as the "Indiana Classes" and the members as the "Indiana Class Members"

17.     The FLSA Collective, the Indiana Wage Payment Class, and Indiana Bonus Class are together referred to as the "Classes" and the member of the Classes are "Class Members."

18.     Plaintiffs reserve the right to redefine the Classes prior to notice or certification, and thereafter, as may be warranted or necessary.

## FACTUAL BACKGROUND

### *CommuniCare's Facilities and Management*

19.     CommuniCare is a family-owned company that operates as a large, multi-state provider of post-acute care and other healthcare services.

20.     Founded by Stephen L. Rosedale, the Rosedale family holds key leadership positions within the company. Stephen L. Rosedale serves as Chairman of the Board, and Isaac Rosedale is the Executive Vice President.

21.     CommuniCare operates approximately 100 healthcare centers across at least seven (7) states: Indiana, Maryland, Missouri, Ohio, Pennsylvania, Virginia, and West Virginia.

22.     CommuniCare employs more than 19,000 individuals across all its locations.

23.     CommuniCare operates a wide range of facilities, including: Skilled Nursing Rehabilitation Centers; Long-Term Care Centers; Assisted Living Communities; Independent Living Communities; Transitional Care; Long-Term Acute Care Hospitals (LTACHs); Hospice Care Services; Home Health Services; and Behavioral Health Services.

24.     CommuniCare operates this diverse portfolio of services and facilities as a single,

integrated, and centrally managed enterprise. This structure involves a top-down management approach with a central corporate office that oversees the management, operations, standards, and strategic direction of all the facilities in its network. The company's public statements—such as its references to "extend[ing] our reach" and "spread[ing] our culture of excellence further and wider"—demonstrate a cohesive, centrally managed organization.

25.     For example, in a January 5, 2022 press release, CommuniCare states, "CommuniCare, a privately held company headquartered in Cincinnati, now *manages* nineteen facilities in the state of Maryland, adding to the more than 90 healthcare centers across seven states. [] CommuniCare Family of Companies . . . takes pride in the *ownership, operation and provision* of patient-centered care[.]"[1]

26.     Similarly, regarding CommuniCare's acquisition of thirteen (13) senior living facilities in Ohio, Isaac Rosedale stated, "It's fulfilling to be able to extend our reach, reflective of serving the growing healthcare needs of a growing population. [] Specific to the new health care operations in Ohio, we are committed to continuing the level of quality clinical care and strength of operations for the residents at these 13 facilities." Stephen Rosedale further affirmed, "We understand and are honored by the responsibility we have for the well-being of those we are privileged to care for, as well as those we are privileged to have on our team. As a family-owned company, we take great pride in the environment and experience we provide for our residents, their families, our partners and our employees." [2]

---

[1] CommuniCare Family of Companies Takes over Management of Skilled Nursing Center in Maryland, https://communicarehealth.com/news/communicare-family-of-companies-takes-over-management/ (January 5, 2022) (emphasis added).
[2] CommuniCare Family of Companies Acquires 13 Skilled Nursing Centers in Ohio, https://www.prnewswire.com/news-releases/communicare-family-of-companies-acquires-13-skilled-nursing-centers-in-ohio (March 1, 2018).

27.     CommuniCare emphasizes its uniform standard of operations across all facilities called the "True Blue Standards of Excellence" and a common mission statement, indicating a unified corporate philosophy and operational approach. CommuniCare's facilities' shared mission statement is as follows:

> Our mission is to provide a superior customer experience: one that not only heals, but also satisfies. To that end, CommuniCare operates in accordance with our True Blue Standards of Excellence.
>
> In our company, "True Blue" is defined as an unwavering commitment to excellence, and our aim is to weave all of our actions and decisions into this framework.[3]

CommuniCare further states "Each and every one of our employees' primary importance stems from our philosophy: Serving with Pride."[4]

28.     CommuniCare's operational philosophy is centered on its "True Blue Standards of Excellence" and a mission of "Serving with Pride." This top-down approach ensures that the company maintains a consistent patient care model, a shared company culture, and uniform policies regarding staffing, training, and services across all its facilities.

29.     CommuniCare's website serves as a single, comprehensive resource for all information related to CommuniCare's services across all of its locations, presenting a unified brand identity to the public.

30.     Similarly, CommuniCare's LinkedIn page is a centralized account, describing its facilities and services across multiple states and confirming it employs more than 19,000

---

[3] CommuniCare, About Us - Standards of Excellence, https://communicarehealth.com/about-us/standards-of-excellence/ (last visited July 26, 2025).
[4] CommuniCare, About Us – Who We Are, https://communicarehealth.com/about-us/who-we-are/ (last visited August 28, 2025).

employees.[5]

31.     CommuniCare maintains a centralized human resources function and has power over personnel decisions and payroll decisions regarding Plaintiffs and Class Members CommuniCare has the power to hire and fire Plaintiffs and Class Members, establish and pay wages, and maintain employment records.

32.     CommuniCare's website advertises open positions across all facilities in multiple states under a single "Healthcare Careers" tab, demonstrating a unified approach to recruitment and hiring.

33.     Plaintiff Cruz's employment offer letter came from "CommuniCare Family of Companies" and noted its corporate headquarters in Cincinnati, Ohio, while specifying her placement at Valley View Healthcare Center in Elkhart, Indiana. The offer, which established her hourly rate of $32.00, was signed by Sean Haley, the Chief People Officer of CommuniCare Family of Companies.

34.     All CommuniCare employees are eligible for the same employee benefits, including a single 401(k) plan with over 17,000 plan participants. The centralized and uniform nature of employee benefits further illustrates the integrated nature of CommuniCare's workforce and benefit administration.

35.     CommuniCare treats employees as part of one large entity rather than separate facility-specific groups. All employees, regardless of full-time, part-time, or PRN classification, who are at least 18 years of age, are eligible to participate in The CommuniCare Employee's 401(k) plan when they have completed six months of service.

---

[5] *See* https://www.linkedin.com/company/communicare-health-services/ (last visited July 26, 2025).

36.     CommuniCare's "True Blue Champions" Employee Awards program is a company-wide initiative, with peer nominations at each facility leading to facility-level awards, and ultimately, a company-wide Employee of the Year.

37.     CommuniCare's employee handbook, states that "[e]very facility has developed as part of an overall employee relations/retention strategy, a CommuniCare Cares Employee Team. These CommuniCare Employee Teams are part of a corporate-wide strategy to promote participative management, esprit de corps within CommuniCare and improve communication and support between CommuniCare facilities."

38.     CommuniCare's employee handbook also includes a welcome message from Steve Rosedale, the CEO and Chairman of the Board of CommuniCare Family of Companies. The messages states "Welcome to the CommuniCare Family of Companies, and welcome to our team. We may not have met yet, but you are now part of our extended family. Our goal is to create a work environment for our staff and a living/rehabilitative environment for our patients/residents that is a caring community."

39.     CommuniCare's facility integration and management is further demonstrated by CommuniCare's company-wide annual leadership summit. The summit, hosted by CEO Stephen Rosedale and other CommuniCare leadership team members, involves presentations, panels, Q&As, and team-building exercises, demonstrating centralized leadership and strategic direction for the entire organization.

40.     It is clear, based upon CommuniCare's public statements, website, LinkedIn page, employee awards and benefit programs, and employee handbook, that all CommuniCare locations are subject to the same and/or similar management and policies.

8

### *CommuniCare Failed to Pay the Proper Overtime Rate*

41.     CommuniCare does not pay Plaintiffs and Class Members for all hours worked in excess of forty (40) hours in a workweek and did not pay proper overtime premiums for the time worked.

42.     Plaintiffs and Class Members are non-exempt hourly employees who provide care and related activities for CommuniCare's residents pursuant to CommuniCare's rules, regulations, guidelines, and policies.

43.     Plaintiffs and Class Members perform no job duties or functions that qualify for any FLSA overtime exemption.

44.     Plaintiffs and Class Members are paid an hourly rate.

45.     Plaintiff Cruz was employed by CommuniCare as a RN from approximately October 2022 to April 2025 in Elkhart, Indiana. Plaintiff Cruz was paid an hourly rate of $36.92.

46.     Plaintiff Gary was employed by CommuniCare as a Qualified Medical Assistant and CNA from approximately August 2022 to February 2025 in Elkhart, Indiana. Plaintiff Gary was paid an hourly rate of $20.65.

47.     Given the nature of their work, Plaintiffs and Class Members regularly work more than forty (40) hours in a workweek.

48.     Plaintiff Cruz regularly worked over fifty (50) hours a week, with bi-weekly work hours as high as120 hours in a two-week pay period.

49.     Plaintiff Gary regularly worked approximately fifty (50) hours a week.

50.     Plaintiffs observed other Class Members working similar schedules.

51.     At all relevant times, CommuniCare has a policy and practice whereby hourly employees are encouraged and/or required to work off-the-clock.

52.     Indeed, Plaintiffs and Class Members are often required to work through meal breaks without proper compensation. Specifically, until October 2024, CommuniCare automatically deducted a thirty (30) minute meal break from Plaintiffs' and Class Members' paychecks, whether or not a meal break was actually taken.

53.     Plaintiff Cruz was required to work through her meal breaks, on average, two (2) shifts per week because she was required to be caring for patients and/or charting medical information of patients. Despite working through her meal breaks, CommuniCare deducted thirty (30) minutes from her paychecks.

54.     Plaintiff Gary was required to work through her lunch on at least five (5) occasions because she was required to be caring for patients and/or charting medical information of patients. Despite working through her meal breaks, CommuniCare deducted thirty (30) minutes from her paychecks.

55.     Plaintiffs observed that other Class Members worked through their meal breaks and were not compensated for their working time.

56.     CommuniCare fails to keep accurate records of the hours that Plaintiffs and Class Members work and fails to provide accurate wage statements to Plaintiffs and Class Members that reflect all hours worked.

57.     Plaintiffs and Class Members also receive non-discretionary compensation in addition to their hourly rate of pay, including, *inter alia*, extra shift pay, shift differentials, perfect attendance bonuses, referral bonuses, sign-on bonuses, and holiday pay (collectively, "additional payments").

58.     For example, Plaintiffs and Class Members receive bonuses for working extra shifts, anywhere from $25 to $150 per shift. However, CommuniCare did not pay these bonuses

out through payroll, but rather gave Plaintiffs and Class Members pre-paid Visa credit cards. As such, these non-discretionary bonuses are not properly included in their regular rate when calculating overtime compensation.

59.     CommuniCare also offers attendance bonuses. For its Indiana locations, CommuniCare advertises quarterly attendance bonuses to direct care staff (MDs, Unit Managers, and all other Direct Care Staff) and culinary staff. Attendance bonuses are awarded to employees with zero absences of any kind during a 90-day quarter. For direct care staff, the bonus pot is split between all direct care staff that qualify for the bonus. The amount of the bonus varies from $1,000 to $3,7000 for each pay cut. For culinary staff, the bonus is $300 for full time employees and $150 for part-time employees. These non-discretionary bonuses are not properly included in Plaintiffs' and Class Members' regular rate when calculating overtime compensation.

60.     Plaintiffs and Class Members are also paid shift differentials, a set rate of pay in addition to their regular hourly pay, for working certain shifts, such as an evening shifts or weekend shifts. CommuniCare fails to include Plaintiffs' and Class Members' full shift differentials in the calculation of their regular rate of pay which resulted in unpaid overtime wages in violation of the FLSA and Indiana law.

61.     For example, during the pay periods of January 14, 2024, January 28, 2024, and October 6, 2024, Plaintiff Cruz was paid shift differentials. However, during these pay periods, CommuniCare did not include all the earned shift differentials into Plaintiff Cruz's regular rate of pay to calculate the proper overtime rate.

62.     During the pay periods of April 27, 2024, May 10, 2024, Plaintiff Gary was paid shift differentials. However, during these pay periods, CommuniCare did not include all of the earned shift differentials into Plaintiff Gary's regular rate of pay to calculate the proper overtime

rate.

63.     CommuniCare has a uniform policy of not properly including shift differentials in Class Members' regular rate of pay.

64.     CommuniCare is aware, or should have been aware, that Plaintiffs and Class Members are paid non-discretionary additional payments and that they work overtime.

65.     Pursuant to the FLSA, non-discretionary bonuses are included in the employee's regular rate of pay unless they qualify as excludable under another statutory provision. According to the U.S. Department of Labor, which is charged with overseeing implementation of the FLSA, "[e]xamples of nondiscretionary bonuses that must be included in the regular rate" of pay for purposes of calculating and paying overtime compensation include:

- Bonuses based on a predetermined formula, such as individual or group production bonuses;

- Bonuses for quality and accuracy of work;

- Bonuses announced to employees to induce them to work more efficiently;

- Attendance bonuses; and

- Safety bonuses (*i.e.*, number of days without safety incidents).[6]

66.     The additional payments are based on a pre-determined formula that is advertised to CommuniCare's non-exempt employees in advance.

67.     The additional payments are paid as part of Plaintiffs' and Class Members' usual wages and treated as compensation along with Plaintiffs' and the Class Members' compensation.

68.     CommuniCare's practice of excluding all forms of non-discretionary renumeration

---

[6] U.S. Dept. of Labor, Wage & Hour Div., *Fact Sheet #56C: Bonuses under the Fair Labor Standards Act (FLSA)*.

in the calculation of overtime is uniform across CommuniCare's various locations in all states.

*CommuniCare Did Not Timely Pay All Wages Due*

69.     As set forth above, CommuniCare offers quarterly attendance bonuses to employees of its Indiana locations. The bonuses are awarded to employees with zero absences of any kind during a 90-day quarter.

70.     Direct care staff shared a bonus pool, with individual bonuses ranging from $1,000 to $3,700.

71.     Culinary staff received a fixed bonus of $300 for full-time employees and $150 for part-time employees.

72.     Attendance bonuses are paid on a regular, quarterly basis and based on employees working all their assigned shifts.

73.     Attendance bonuses are considered "earned" after a set 90-day period with no absences. Attendance bonuses can be calculated within ten days after being earned.

74.     Attendance bonuses are not based on the financial success of the company.

75.     Attendance bonuses are not contingent on factors outside an employee's or employer's control.

76.     The attendance bonuses were advertised at CommuniCare's Indiana facilities by CommuniCare supervisors. See example of posting:



77.     Plaintiff Gary earned this attendance bonus on three occasions (Q1, Q2, and Q3 of 2024). CommuniCare paid Plaintiff Gary's Q2 bonus late and failed to pay the Q3 bonus.

78.     Plaintiff Cruz earned this attendance bonus for Q1, Q2, and Q3 of 2024, but CommuniCare failed paid Plaintiff Cruz only for Q1. CommuniCare did not pay Plaintiff Cruz for the bonuses she properly earned for Q2 and Q3.

79.     In December 2023, Cruz's supervisor confirmed that she had qualified and was on the payment list. Despite Cruz's continued contact with her supervisor through April 2025, CommuniCare never paid the earned bonus.

80.     At no point did CommuniCare tell Class Members that the bonus program had been rescinded. Class Members relied on the attendance bonus, abided by the terms of the bonus and

completed their necessary shifts, but yet, CommuniCare failed to pay all earned bonuses.

### *CommuniCare Willfully Violated the FLSA and Indiana Laws*

81. CommuniCare's actions in violation of the FLSA as set forth herein were and are made willfully to avoid liability under the FLSA and state law. Such willfulness is demonstrated by, or may be reasonably inferred from, CommuniCare's actions and failures to act.

82. CommuniCare fails to maintain accurate records of the actual hours that Plaintiffs and Class Members worked each workday, and the total hours worked each workweek.

83. CommuniCare knew or should have known that the work that they required of Plaintiffs and other Class Members should have been paid for all time working through meal breaks.

84. CommuniCare knew or should have known that the non-discretionary additional payments that they paid should have been properly incorporated into the regular rate for purposes of calculating overtime compensation under the FLSA and state law.

85. CommuniCare purposefully paid Plaintiffs and Class Members their extra shift bonuses with gift cards to avoid paying payroll taxes and overtime payments.

86. CommuniCare is a sophisticated national business with access to knowledgeable human resource specialists and competent legal counsel who can and should advise CommuniCare of their obligations under the FLSA and state law.

87. CommuniCare knew or should have known that Plaintiffs and Class Members are entitled to overtime wages for all hours worked because CommuniCare classified Plaintiffs and Class Members as non-exempt under the FLSA.

88. By failing to pay all the compensation owed, including overtime compensation, to Plaintiffs and other non-exempt employees as detailed above, CommuniCare acted willfully and

in reckless disregard of clearly applicable FLSA and state law obligations.

89.     CommuniCare has not made good faith efforts to comply with the FLSA and Indiana state law.

## COLLECTIVE ACTION ALLEGATIONS

90.     Plaintiffs bring this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of themselves and the FLSA Collective as defined above.

91.     Plaintiffs desire to pursue their FLSA claim on behalf of all individuals who opt in to this action pursuant to 29 U.S.C. § 216(b).

92.     Plaintiffs and the FLSA Collective are "similarly situated" as that term is used in 29 U.S.C. § 216(b) because, *inter alia*, all such individuals currently work or have worked pursuant to CommuniCare's common business and payroll practices as described herein, and, as a result of such practices, have not been paid overtime compensation due as described herein. Resolution of this action requires inquiry into common facts, including, inter alia, CommuniCare's common compensation and payroll practices.

93.     These similarly situated employees are known to CommuniCare, readily identifiable, and can be easily located through CommuniCare's business records.

94.     CommuniCare employs and has employed many FLSA Collective members throughout the United States. These similarly situated current and former employees may be readily notified of this action through U.S. mail and/or other reasonable means, and allowed to opt in to this action, pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for unpaid wages, liquidated damages, interest, attorney's fees, and costs under the FLSA.

## CLASS ACTION ALLEGATIONS

95.     Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf

of themselves and the Indiana Class defined above.

96.    The members of the Indiana Classes are so numerous that joinder of all members is impracticable. Upon information and belief, there are more than 40 members of the Indiana Classes.

97.    CommuniCare has engaged in the same conduct towards Plaintiffs and the other members of the Indiana Classes.

98.    The injuries and damages to the Indiana Classes present questions of law and fact that are common to each class member within the Indiana Classes, and that are common to the Indiana Classes as a whole.

99.    Plaintiffs will fairly and adequately represent and protect the interests of the Indiana Classes, and all of its potential class members because there is no conflict between the claims of Plaintiffs and those of the Indiana Classes, and Plaintiffs' claims are typical of the claims of the Indiana Classes.

100.    Plaintiffs' counsel are competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases like this one.

101.    Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Indiana Classes predominate over any questions affecting only individual Class members including, without limitation: (1) whether CommuniCare paid them for all time worked; (2) whether CommuniCare failed to pay them the full amount of overtime compensation earned; and (3) whether CommuniCare failed to pay earned attendance bonuses.

102.    Plaintiffs' claims are typical of the claims of the Indiana Classes in the following ways, without limitation: (a) Plaintiffs are members of the Indiana Classes; (b) Plaintiffs' claims arise out of the same policies, practices and course of conduct that form the basis of the claims of

the Indiana Classes; (c) Plaintiffs' claims are based on the same legal and remedial theories as those of the Indiana Classes and involve similar factual circumstances; (d) there are no conflicts between the interests of Plaintiffs and the members of the Indiana Classes; and (e) the injuries suffered by Plaintiffs are similar to the injuries suffered by the members of Indiana Classes.

103.    Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated individuals to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The Indiana Classes are readily identifiable from CommuniCare's employment records. Prosecution of separate actions by individual members of the Indiana Classes would create the risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for CommuniCare.

104.    A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical. Further, the amounts at stake for many of the members of the Indiana Classes, while substantial, are not great enough to enable them to maintain separate suits against CommuniCare.

105.    Without a class action, CommuniCare will retain the benefit of their wrongdoing, which will result in further damages to Plaintiffs and the Indiana Classes. Plaintiffs envision no difficulty in the management of this action as a class action.

**COUNT I**
**Violation of the FLSA**
**(On Behalf of Plaintiffs and the FLSA Collective)**

106.     All previous paragraphs are incorporated as though fully set forth herein.

107.     The FLSA requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1½) times the regular rate at which he is employed. *See* 29 U.S.C. § 207(a)(1).

108.     CommuniCare is subject to the wage requirements of the FLSA because CommuniCare is an "employer" under 29 U.S.C. § 203(d).

109.     At all relevant times, each of CommuniCare was, and continues to be, an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

110.     During all relevant times, the members of FLSA Collective, including Plaintiffs, were covered employees entitled to the above-described FLSA's protections. *See* 29 U.S.C. § 203(e).

111.     Plaintiffs and the FLSA Collective are not exempt from the requirements of the FLSA.

112.     Plaintiffs and the FLSA Collective are entitled to be paid overtime compensation for all hours worked over forty (40) in a workweek.

113.     The FLSA defines the "regular rate" as including "all remuneration for employment paid to, or on behalf of, the employee[.]" 29 U.S.C. § 207(e).

114.     The Supreme Court has held that the term "regular rate" "obviously means the hourly rate actually paid the employee for the normal, non-overtime workweek." *Bay Ridge v. Operating Co. v. Aaron,* 334 U.S. 446, 460 (1948) (quoting *Walling v. Helmerich & Payne, Inc.,*

323 U.S. 37, 40 (1944)).

115.    With a few limited exceptions, all remuneration given to an employee must be included in the employee's regular rate calculation. *See* 29 U.S.C. § 207(e); 29 C.F.R. § 778.108.

116.    Plaintiffs and the FLSA Collective receive non-discretionary compensation in addition to their hourly rate of pay, including, *inter alia*, extra shift pay, shift differentials, perfect attendance bonuses, referral bonuses, sign-on bonuses, and holiday pay.

117.    The additional payments that CommuniCare provides are non-discretionary and should be included in Plaintiffs and the FLSA Collective Members' regular rate.

118.    The additional payments are paid as part of Plaintiffs' and the FLSA Collective's usual wages.

119.    The additional payments are promised to Plaintiffs and the FLSA Collective in advance.

120.    The additional payment amounts are predetermined and based on fixed formulas with defined metrics, causing Plaintiffs and the FLSA Collective to form a reasonable and definite expectation that they receive the additional payments, and they did receive the additional payments.

121.    CommuniCare denies overtime compensation on the additional payment portion of the hourly wages of the FLSA Collective Members.

122.    CommuniCare further fails to properly compensate Plaintiffs and the FLSA Collective for all hours worked when they worked in excess of forty (40) hours per week by auto-deducting thirty (30) minutes from Plaintiffs' and the FLSA Collective's paychecks even when they worked through their meal breaks.

123.     CommuniCare also fails to create, keep, and preserve accurate records with respect to work performed by Plaintiffs and the FLSA Collective sufficient to determine their wages, hours, and other conditions of employment in violation of the FLSA, 29 U.S.C.A. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c).

124.     CommuniCare's actions violated and continue to violate the FLSA and its implementing regulations.

125.     In violating the FLSA, CommuniCare has acted willfully and with reckless disregard of clearly applicable FLSA provisions.

126.     Pursuant to 29 U.S.C. § 216(b), employers such as CommuniCare, who fail to pay employee wages in conformance with the FLSA shall be liable to the employee for unpaid wages, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

**COUNT II**
**Violation of the Indiana Wage Payment Statute, Ind. Code § 22-2-5-1, *et seq*.**
**(On Behalf of Plaintiffs and the Indiana Classes)**

127.     All previous paragraphs are incorporated as though fully set forth herein.

128.     Plaintiffs and members of the Indiana Classes voluntarily quit or are currently employed by CommuniCare.

129.     At all relevant times, Plaintiffs and members of the Indiana Classes have been entitled to the rights, protections, and benefits provided under the IWPS, Ind. Code § 22-2-5-1, *et seq*.

130.     At all relevant times, Plaintiffs and other of the Indiana Class Members were "employees" of CommuniCare within the meaning of the IWPS. Ind. Code § 22-2-5-1(a).

131.     CommuniCare is subject to the IWPS requirements because CommuniCare is an employer under Ind. Code § 22-2-2-3.

132.    Pursuant to IWPS, "[e]very person, firm, corporation, limited liability company, or association, their trustees, lessees, or receivers appointed by any court, doing business in Indiana, shall pay each employee … the amount due the employee." Ind. Code § 22-2-5-1(a).

133.    CommuniCare has not paid Plaintiffs and other members of the Indiana Classes who are currently employed by CommuniCare or who voluntarily left their employ their due and owing wages that they are entitled to by operation of law.

134.    Plaintiffs and members of the Indiana Classes seek to recover under the IWPS the difference between what they were paid by CommuniCare for regular and overtime hours worked and the amount to which they were entitled by law.

135.    Plaintiffs and members of the Indiana Classes also seek to recover under the IWPS the attendance bonuses they earned, an amount they are entitled to by operation of law.

136.    Separately, CommuniCare also fails to pay Plaintiffs and members of the Indiana Classes their wages due on their next and usual payday.

137.    By failing to compensate Plaintiffs and other members of the Indiana Classes who are currently employed by CommuniCare who voluntarily left their employ for their hours worked within the necessary time frame after they became due, Communicable is also liable to Plaintiffs and members of the Indiana Classes under the IWPS.

138.    CommuniCare's violation of the IWPS are willful and are not actions and omissions made in good faith.

139.    Plaintiffs and other members of the Indiana Classes are entitled to their wages due, double the amount of wages due, and reasonable attorneys' fees and costs as required by Ind. Code § 22-2-5-2.

## COUNT III
## Unjust Enrichment Under Indiana Law
## (On Behalf of Plaintiffs and the Indiana Classes)

140.    All previous paragraphs are incorporated as though fully set forth herein.

141.    This count is brought against CommuniCare pursuant to the common law doctrine of unjust enrichment.

142.    Indiana courts articulate three elements for [unjust enrichment] claims: (1) a benefit conferred upon another at the express or implied request of this other party; (2) allowing the other party to retain the benefit without restitution would be unjust; and (3) the plaintiff expected payment." *Woodruff v. Indiana Family & Soc. Servs. Admin.,* 964 N.E. 2d 784, 791 (Ind. 2012).

143.    CommuniCare has received and benefited from Plaintiffs' uncompensated labors, along with that of the other members of the Indiana Classes, such that to retain said benefit without compensation would be inequitable and rise to the level of unjust enrichment.

144.    At all relevant times hereto, CommuniCare devised and implemented a plan to increase its earnings and profits by fostering a scheme of securing work from Plaintiffs and members of the Indiana Classes without paying for all hours worked under forty in a workweek, known as "gap time" or "straight time."

145.    At all relevant times hereto, CommuniCare devised and implemented a plan to increase its earnings and profits by fostering a scheme of securing perfect attendance from Plaintiffs and members of the Indiana Classes without their earned attendance bonuses.

146.    Contrary to all good faith and fair dealing, CommuniCare induced Plaintiffs and the Classes to perform work while failing to pay compensation for all hours worked for weeks in which Plaintiffs and the Class worked under forty hours a week as required by law.

147.    By reason of having secured the work and efforts of Plaintiffs and the Class without paying "straight time" or "gap time" compensation as required by law, CommuniCare enjoyed

reduced overhead with respect to its labor costs, and therefore, realized additional earnings and profits to their own benefit and to the detriment of Plaintiffs and the Indiana Classes. CommuniCare retained and continue to retain such benefits contrary to the fundamental principles of justice, equity, and good conscience.

148.     Accordingly, Plaintiffs and the Indiana Classes are entitled to judgment in an amount equal to the benefits unjustly retained by CommuniCare.

**COUNT IV**
**Breach of Contract Under Indiana Law**
**<u>(On Behalf of Plaintiffs and the Indiana Bonus Class)</u>**

149.     All previous paragraphs are incorporated as though fully set forth herein.

150.     At all relevant times, CommuniCare had binding and valid contracts with Plaintiffs and other of the Indiana Bonus Class Members to pay each employee a non-discretionary bonus for 90-day periods in which the employee had zero absences.

151.     Evidence of these contracts include CommuniCare's pay statements, bonus advertisements, internal policies, and other documentary evidence in CommuniCare's possession. Additionally, CommuniCare made verbal offers to Indiana Bonus Class Members, which Plaintiffs accepted and performed, but CommuniCare failed to perform by paying Plaintiffs and Indiana Bonus Class Members the promised wages.

152.     Each Indiana Bonus Class Member who worked in Indiana was contractually entitled to their promised attendance bonus within the Relevant Time Periods.

153.     Plaintiffs and Indiana Bonus Class Members performed under the agreement by doing their jobs and reporting to all of their assigned shifts.

154.     By failing to pay Plaintiffs and Indiana Bonus Class Members earned attendance bonuses, CommuniCare systematically breached the agreements it had with Plaintiffs and Indiana

Bonus Class Members.

155. As a direct and proximate result of CommuniCare's breaches of the contracts alleged herein, Plaintiffs and Indiana Bonus Class Members have been damaged in an amount to be determined at trial.

## COUNT V
### Promissory Estoppel Under Indiana Law (In the Alternative)
### (On Behalf of Plaintiffs and the Indiana Bonus Class)

156. This count is plead in the alternative to Breach of Contract, *supra*, pursuant to FED. R. CIV. P. 8(d)(2).

157. All previous paragraphs are incorporated as though fully set forth herein.

158. CommuniCare made a clear, unambiguous, and definite promise to Indiana Bonus Class Members, including Plaintiffs, that they would receive a quarterly attendance bonus if they had no absences during a 90-day period.

159. CommuniCare advertised this bonus program at its Indiana facilities and specified the criteria for earning the bonus, including the amount for different types of staff.

160. CommuniCare knew or should have known that its promise of a bonus would induce Indiana Bonus Class Members to act. Specifically, it was reasonably foreseeable that Indiana Bonus Class Members would rely on this promise by making every effort, including forgoing use of vacation time or picking up extras shifts to substitute sick time used, to attend all of their scheduled shifts over a 90-day period.

161. In actual reliance on CommuniCare's promise, Plaintiffs and Indiana Class Members abided by the terms of the program and worked all of their assigned shifts with zero absences. Both Plaintiffs earned the bonus on three occasions but were not properly paid. Their reliance was reasonable because the promise was made by CommuniCare supervisors and never

rescinded.

162.    By meeting the terms of the bonus program, they fulfilled their part of the agreement, but CommuniCare failed to pay the full amount of the promised bonuses.

163.    As a direct result of their reasonable reliance, Plaintiffs and Indiana Class Members suffered damages as a result of CommuniCare's failure to pay the earned bonuses. This injury includes the loss of the promised wages.

164.    Injustice can be avoided only by enforcement of the promise.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs seek the following relief on behalf of themselves and all others similarly situated:

   a.    An order permitting this litigation to proceed as an FLSA collective action pursuant to 29 U.S.C. § 216(b);

   b.    Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential FLSA Collective Members;

   c.    An order permitting this litigation to proceed as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the Indiana Classes;

   d.    Back pay damages and prejudgment interest to the fullest extent permitted under the law;

   e.    Liquidated damages to the fullest extent permitted under the law;

   f.    Punitive damages as permitted under the law;

   g.    Litigation costs, expenses and attorneys' fees to the fullest extent permitted under the law; and

   h.    Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a jury trial on all claims and issues for which Plaintiffs and the Classes are entitled to a jury.

Dated: September 5, 2025               Respectfully submitted,

/s/ Robi J. Baishnab
Robi J. Baishnab (0086195)
Adam M. Lubow (00 97517)
**NILGES DRAHER LLC**
1360 E. 9th St, Suite 808
Cleveland, OH 44114
Telephone: 216-230-2955
Facsimile: 330-754-1430
Email: rbaishnab@ohlaborlaw.com
       alubow@ohlaborlaw.com

*Local and Trial Attorneys*

Camille Fundora Rodriguez*
Olivia Lanctot*
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4620
crodriguez@bergermontague.com
olanctot@bergermontague.com

Mariyam Hussian*
**BERGER MONTAGUE PC**
110 N. Wacker Drive, Suite 2500
Chicago, IL 60606
Telephone: (773) 666-4316
mhussain@bermontague.com

*Attorneys for Plaintiffs and the*
*Proposed FLSA Collective and Classes*

*\* pro hac vice forthcoming*